**UNITED STATES DISTRICT COURT**
**IN AND FOR THE SOUTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| MICHAEL CAMPBELL, | ) | CIVIL NO.  4:07-CV-00567-JAJ-TJS |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| ALFRED DUNHAM, | ) | |
| | ) | |
| Defendant. | ) | |

In accordance with the Text Order filed July 15, 2009 (Clerk's No. 29), by District Judge

John A. Jarvey, referring this case to the undersigned magistrate for Report and

Recommendation pursuant to 28 U.S.C. § 636(b)(1), an evidentiary hearing was conducted on

May 13, 2010.

Plaintiff Michael Campbell appeared pro se and in person at the time of that hearing.

Defendant Dr. Alfred Dunham appeared in person, and with his attorney, William A. Hill,

Assistant Iowa Attorney General.

The Report and Recommendation follows:

## I. INTRODUCTION

Plaintiff Michael Campbell ("Campbell"), filed this Complaint (Clerk's No. 1) against Dr.

Alfred Dunham ("Dunham") pursuant to 42 U.S.C. § 1983 on December 17, 2007, alleging

deliberate indifference in Dr. Dunham's dental treatment by Campbell.  Campbell contends that

Dr. Dunham failed to provide him with dentures while incarcerated in the Iowa Department of

Corrections.  He seeks compensatory and punitive damages, as well as injunctive relief.

An order dated July 15, 2009, referred this matter to the undersigned United States

Magistrate Judge for the issuance of a report and recommendation.  Parties submitted exhibits

and testimony at an evidentiary hearing held on May 13, 2010.  Jurisdiction and venue are

appropriate under 28 U.S.C. § 1343 and 28 U.S.C. § 1391 respectively.

## II. FINDINGS OF FACT

Campbell entered the Clarinda Correctional Facility ("Clarinda") as an inmate in March

2006. (Ex. D).  In March 2008, he left Clarinda on work release and was later paroled in May

2008. (*Id.*).  Campbell is forty-nine years old, and currently resides in Oxford Junction, Iowa.

(Hearing Transcript at 18).

The State of Iowa employs Dr. Dunham as the director of dental services at Clarinda. (*Id.*

at 29).  Dr. Dunham has spent the majority of his professional career performing dentistry at

Clarinda. (*Id.* at 29-30).  He is licensed to perform dentistry in the both Iowa and Nebraska. (*Id.*).

Campbell entered the Iowa Department of Correction's system through the Oakdale

Correctional Facility ("Oakdale"). (*Id.* at 18).  While only having seven teeth, Campbell claims

he had no problems with those teeth prior to entering the Department of Correction's facilities.

(*Id.* at 18-19).  On March 8, 2006, Campbell received a dental exam from Dr. Carl Weilbrenner,

Oakdale's dentist. (Ex. A at 9).  The "Dental Encounter" form from this appointment lists seven

teeth to be extracted as Priority II procedures, and upper and lower dentures to be completed as

Priority III procedures. (Ex. A at 8).  Campbell transferred to Clarinda on March 24, 2006,

before the completion of either procedure. (Ex. D).

On June 1, 2006, Campbell attended an appointment with Dr. Dunham, for a broken

tooth. (Hearing Transcript at 20).  Dr. Dunham offered to remove Campbell's broken tooth, as

well as his remaining six teeth, and to replace them with dentures. (*Id.* at 20).  While discussing

this decision, Campbell believes Dr. Dunham stated that he would receive his dentures in six to

eighth months. (*Id.*).  Dr. Dunham disagrees with Campbell's recollection of their conversation, and testified that:

> I told him "look, you can't be jumping into the system this early anyway."
> I didn't care if I had nobody here, "I would not give you a set of dentures for
> at least six to eighth weeks."  That's what I told him.  We don't promise
> dentures because we don't know when they're going to come up.

(*Id.* at 43).  During this conversation, Campbell agreed to wait on the denture list and have his remaining teeth removed. (*Id.* at 20).

At the time of the surgery, Campbell signed a "Dental Surgery Consent" form. (Ex. A at 12; Hearing Transcript at 21).  The form states:

> I agree to have these teeth extracted with the understanding that these teeth
> may not be replaced while in the [Department of Corrections].  I am aware
> denture and partial lists are very long and even if I should qualify to have
> them for functional purposes, there is no guarantee I will get them while in
> the [Department of Corrections].

(Ex. A at 12).  The surgery removed Campbell's seven remaining teeth, and Dr. Dunham prescribed Ibuprofen and Acetaminophen for the pain associated with the surgery (ten days), as well as Chlorhexidine Oral Rinse to prevent gingivitis, gum bleeding and gum swelling (five days). (Ex. A at 7).  Months later, Campbell took the appropriate measures to request his denture fitting; however, each request produced a response that the denture waitlist fluctuated with admission and release of new inmates. (Hearing Transcript at 8; Ex. A at 1 and 4).  Dr. Dunham also testified that the denture list flucates with admission and release of new inmates. (Hearing Transcript at 40-41).

According to Dr. Dunham, he "basically wrote" the initial system for categorizing and prioritizing the dental needs of inmates. (*Id.* at 32).  The "Dental Services Overview" contains

the procedures of this system, as adopted by the State of Iowa Department of Corrections Policy and Procedures:

> C.  Dental Treatment Priorities
>
> Care and treatment should be provided consistent with the following three priorities and listed examples.  The dental practitioner may use their professional judgment to upgrade or downgrade the priority of an offender's dental condition.
>
> 1.  Priority I – evaluate and/or treat as quickly as possible, no later than the next working day.
>> a.    Incapacitating pain
>> b.    Facial swelling
>> c.    Oral – facial trauma
>> d.    Suspected serious pathological conditions
>> e.    Profuse bleeding
>
> 2.  Priority II – schedule for treatment as soon as possible
>> a.    Gross caries requiring extraction, pulpotomy, sedative fillings, or major operative treatment
>> b.    Initial treatment phase of periodontitis II, III, IV including scaling, root planning, and oral hygiene instruction
>> c.    Endo filing and obturation
>> d.    Re-cementing fixed prostheses
>> e.    Removable Prosthetics – Reline, Repair
>
> 3.  Priority III – may be scheduled after all Priority II needs are met.
>> a.    Small carious lesions
>> b.    Prophylaxis

(Ex. E at 2-3).

During his testimony, Dr. Dunham stated that Clarinda has "a mass of people [who] are priority two, and in our facility right now I think that number is probably five or six hundred. We obviously can't see all those people today, so then it becomes a triaging process, and that's where professional skill and judgment has to come in." (Hearing Transcript at 33).

The "Dental Services Overview" also contains standards and procedures for dentures:

 E.  Dentures and Partials

 Patients are placed on the denture list at the dentist's discretion

  1.  Once dental prosthetic treatment has been undertaken, the offender must be placed on a dental hold so no transfer can take place until the prosthesis is complete.

  2.  An effort should be made to devote one half day per month or a comparable percentage of time in cases of part-time dental coverage for removable prosthetics.

(Ex. E at 3).

Campbell contends that these procedures were not followed fairly in his case.  Kenneth Kirkpatrick ("Kirkpatrick"), another Clarinda inmate, signed a notarized affidavit that claimed Dr. Dunham removed his teeth on June 23, 2006, three weeks after Campbell's, but received his dentures on February 4, 2008. (Ex. J).  Kirkpatrick's dental work was completed by Dr. Dunham at Clarinda. (*Id.*).

Up until the date of the evidentiary hearing, May 13, 2010, Campbell has lived without teeth or dentures. (Hearing Transcript at 12).  Since the removal of his teeth on June 1, 2006, Campbell has gone without teeth for three years and eleven months.  He claims that while incarcerated he suffered from burning feces, bruised and bleeding gums, lack of sleep and impaired speech caused by his lack of teeth/dentures. (*Id.* at 8).  Campbell believes his inability to masticate properly has caused his digestive problems. (*Id.* at 13).  He contends that he lost ten to twelve pounds as a result of having no teeth; however, Campbell's "Weight Flow Sheet" shows very little fluctuation in his weight once his teeth were extracted. (*Id.* at 24; Ex. B).

Furthermore, Campbell posits that he was diagnosed with hepatitis C and his treatment consisted of eating more protein, fruits and vegetables. (Hearing Transcript at 13, 24).  He suggests that having no teeth made it difficult to comply with the necessary treatment for this disease. (*Id.*).  Dr. Dunham believes that a lack of teeth does not constitute an emergency medical need, and the removal of Campbell's teeth truly benefited his health. (*Id.* at 11, 42).

### III. LAW

Title 42 U.S.C. § 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory … subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action of law, suit in equity, or other proper proceeding for redress.

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  *Albright v. Oliver*, 501 U.S. 266, 271, 114 S.Ct. 807, 811 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 2694, n. 3, 61 L.Ed.2d 433 (1979)).  Section 1983 only provides a remedy for violations of federal rights, or "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." 42 U.S.C. § 1983; *see Maine v. Thiboutot*, 448 U.S. 1, 4, 100 S.Ct. 2502, 2504, 65 L.Ed.2d 555 (1980) ("Constitution and laws" allows remedies for violations of rights provided by federal statute, as well as those provided by the Constitution.)  Therefore, "[t]he first step in [a section 1983] claim is to identify the specific constitutional right allegedly infringed."

*Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989); and

*Baker*, 443 U.S. at 140, 99 S.Ct. at 2692.[1]

Campbell alleges that Dr. Dunham violated his constitutional rights under the Eighth

Amendment by deliberately disregarding his need for dentures.  (Complaint at 10).

The Eighth Amendment of the United States Constitution states in pertinent part that "...

nor cruel and unusual punishment inflicted." U.S. CONST. amend. VIII.  It is well established that

the Eighth Amendment requires prison officials to provide inmates with necessary medical care.

*Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976).  A violation of

the Eighth Amendment occurs when a prison official acts deliberately indifferent to an inmate's

serious medical need or to conditions posing a substantial risk of serious future harm.  *Estelle*,

429 U.S. at 104-05, 97 S.Ct. at 291 (existing serious medical need); *Helling v. McKinney*, 509

U.S. 25, 33, 113 S.Ct. 2475, 2480-81 (1993) (risk of future harm).  Therefore, to succeed on a

section 1983 claim of deliberate indifference, "plaintiffs must prove an objectively serious

medical need and that the prison officials knew of the need but deliberately disregarded it."

*Langford v. Norris*, --- F.3d ----, 2010 WL 2813551 (8th Cir. 2010) (citing *Gordon ex rel.*

*Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006) and *Crow v. Montgomery*, 403 F.3d 598,

602 (8th Cir. 2005)).

The requirement of an "objectively serious medical need" is responsive to "contemporary

standards of decency."  *Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 1000 (1992) (citing

*Estelle*, 429 U.S. at 103, 97 S.Ct. at 290). "Because society does not expect that prisoners will

---

[1] The second step in a 1983 claim is to establish that the individual who deprived the plaintiff's acted under the color of state law. 42 U.S.C. § 1983.  There is no dispute that Dr. Dunham acted under the color of state law.

have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are serious." *Hudson*, 503 U.S. at 8, 112 S.Ct. at 1000 (citing *Estelle*, 429 U.S. at 103-04, 97 S.Ct. at 290-91).   An inmate's bare assertions of medical ailments are not sufficient evidence to find a serious medical need. *Kayser v. Caspari*, 16 F.3d 280, 281 (8th  Cir. 1994).   Therefore, to constitute an "objectively serious medical need," the need must be supported by medical evidence or must be so obvious that a layperson would recognize the need for a doctor's attention.  *Aswegan v. Henry*, 49 F.3d 461, 464 (8th Cir. 1995);  *Johnson v. Busby*, 953 F2d 349, 351 (8th Cir. 1991).

Dental needs, like other medical conditions, range from uncomplicated to threatening. Thus, they may be recognized as a serious medical need in support of a section 1983 deliberate indifference claim.  For example, the Eighth Circuit in *Boyd v. Knox*, found that for another dental procedure a three week delay in dental care supported an Eighth Amendment violation. *Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995).  More specific to dentures, courts outside the Eighth Circuit have found that, under certain circumstances, lack of dentures or delay in their production constitutes a serious medical need.  *See Maclary v. Allen*, 2005 WL 2978610, at *2 (D.Del. Nov. 7 2005) (holding that lack of dentures for over a year was a condition which a layperson would easily recognize as needing a dentist's attention, and was thus a serious medical need.   Furthermore, the prisoner alleged that he was unable to chew his food, significantly hindering his ability to eat and therefore lack of dentures "could be expected to lead to substantial and unnecessary suffering and is thus a serious medical need."); *Gasaway v. Dist. of Columbia*, 1996 WL 225699, at *2 (D.D.C. Apr. 29, 1996) (holding that having no upper teeth and only six lower teeth for 14 months before being provided by the prison with dentures that

had been prescribed constituted serious medical need); *Dean v. Coughlin*, 623 F.Supp. 392, 401

(S.D.N.Y. 1985) (enjoining prison system to provide adequate care for prisoners' serious dental

needs, including the provision of dentures in a timely fashion); *but see Harter v. Davis*, 2008 WL

786742, at *7 (E.D.Mich. Mar. 24, 2008) (granting prison officials summary judgment where

medical records belied Plaintiff's claim that he suffered severe symptoms due to lack of dentures

for approximately 18 months).  While these later cases are not authoritative, they do suggest that

a lay person finds a lack of teeth/dentures for a substantial period of time is an objectively

serious medical need.

　　　The second requirement, that officials deliberately disregard an inmate's medical need, is

responsive to the principle that "only the 'unnecessary and wanton infliction of pain' implicates

the Eighth Amendment." *Estelle*, 429 U.S. at 104, 97 S.Ct. at 291 (quoting *Gregg v. Georgia*,

428 U.S. 153, 173, S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1979) (to avoid "excessiveness…. the

punishment must not involve the unnecessary and wanton infliction of pain.")).  To meet this

requirement, a plaintiff must prove prison officials had a state of mind that was "deliberately

indifferent" to the plaintiff's health or future well being.  *Farmer v. Brennan*, 511 U.S. 825, 839-

40, 114 S.Ct. 1970, 1980, 128 L.Ed.2d 811 (1994); *Helling*, 509 U.S. at 32, 113 S.Ct. at 2480.

The Supreme Court further clarified the meaning of "deliberate indifference" in *Farmer*:

> [A] Prison official cannot be found liable under the Eighth Amendment for
> denying an inmate human conditions of confinement unless the official
> knows of and disregards an excessive risk to inmate health or safety; the
> official must both be aware of the facts from which the inference could be
> drawn that a substantial risk of serious harm exists, and he must also draw
> from that inference."

*Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.  In this manner, the Court has employed this test of "subjective recklessness," as used in criminal law, as the standard for "deliberate indifference." *Farmer*, 511 U.S. at 839, 114 S.Ct. at 1980.

Under the *Farmer* standard for deliberate indifference, a prison official may be held liable for a violation of a prisoner's Eighth Amendment rights if he knows that an inmate faces a substantial risk of harm and fails to take reasonable measures to prevent that risk. *Coleman v. Rahija*, 114 F.3d 778, 785 (8th Cir. 1997) (citing *Farmer*, 511 U.S. at 847).  An Eighth Amendment claim does not need to show that the prison official believed the harm would actually occur, but only that the official acted or failed to act despite his knowledge of the substantial risk of serious harm.  *Coleman*, 114 F.3d at 786 (citing *Farmer*, 511 U.S. at 842). "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842 (citations omitted).

Not only must the prison official have knowledge of a substantial risk of harm, but he must also disregard that risk.  An inmate may prove deliberate indifference by showing the complete deprivation of medical care; however, total deprivation is not necessary for finding a constitutional violation. *Langford*, --- F.3d at ----, 2010 WL 2813551 (quoting *Estelle*, 429 U.S. at 103).  "Grossly incompetent or inadequate care can [also] constitute deliberate indifference, as can a doctor's decision to take an easier and less efficacious course of treatment. *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990) (citations omitted).

# IV. ANALYSIS

For Campbell to successfully claim deliberate indifference under section 1983, he must meet the two requirements set forth by the Eighth Circuit. *Aswegan*, 49 F.3d at 464.  First, Campbell must show that his lack of dentures constitutes an objectively serious medical need, which must be supported by medical evidence or appear so obvious that a layperson would recognize its severity.  Secondly, Campbell must establish that Dr. Dunham had the requisite state of mind, that of deliberate indifference to Campbell's health or safety.  By establishing both of these requirements, Campbell would prove that Dr. Dunham violated his Eighth Amendment right.

In this magistrate judge's opinion, the evidence presented by Campbell fails to establish that Dr. Dunham violated his federally protected right to be free from cruel and unusual punishment.  In general, the testimony from both Campbell and Dr. Dunham appears credible.  Campbell's lack of dentures for a period of time lasting nearly four years, including the diminished ability to eat, may have risen to the level of an objectively serious medical need.  However, Dr. Dunham took sufficient precautions in response to this need to prevent a finding that he acted deliberately indifference to Campbell's need for dentures.

There are no Eighth Circuit opinions addressing whether the lack of dentures constitutes a serious medical need.  However, the Seventh Circuit addressed a similar claim in *Wynn v. Southward*, where the plaintiff alleged that he could not chew his food without dentures, which impeded his ability to eat.  *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001).  The plaintiff also experienced headaches and bleeding. *Id.*  In that case, the Seventh Circuit found that the

plaintiff's allegations demonstrated a serious medical need for dentures. *Id.*  Similar to the

plaintiff in *Wynn*, Campbell's condition significantly hindered his ability to chew his food,

which resulted in his diminished ability to eat.  In fact, Campbell spent approximately twenty-

one months at Clarinda without teeth, which he claims resulted in digestive and oral

complications.  To constitute an objectively serious medical need, the need must be supported by

medical evidence or must be so obvious that a layperson would recognize the need for a doctor's

attention. *Aswegan*, 49 F.3d at 464.  Plaintiff's lack of dentures falls into the latter category.

Therefore, Campbell's lack of dentures could be expected to lead to a substantial and

unnecessary suffering and, thus, a serious medical need.

      Dr. Dunham's actions with respect to Campbell's medical need did not rise to the level of

deliberate indifference.  The requirements for a finding of deliberate indifference include

knowledge of a substantial risk of harm to the prisoner and failure to take reasonable measures to

prevent that risk. *Farmer*, 511 U.S. at 847; *Coleman*, 114 F.3d at 785.  Dr. Dunham had

sufficient knowledge that Campbell's condition risked future harm.  "If … evidence showing

that a substantial risk was longstanding, pervasive, well-documented, or expressly noted  by

prison officials in the past, and the circumstances suggest that the defendant-official being sued

had been exposed to [the] information … and thus must have known about it, then such evidence

could be sufficient … to find that the defendant-official had actual knowledge of the risk."

*Farmer*, 511 U.S. at 842-43; *Coleman*, 114 F.3d at 786.  The risk to Campbell was longstanding,

lasting nearly four years; pervasive, as Dr. Dunham noted that Campbell became "infamous;"

well documented and noted by prison officials in dental records and inmate KITEs.  Dr. Dunham

may have known of the substantial risk by the very fact that the risk was obvious. *See Farmer*,

511 U.S. at 842; *Coleman*, 114 F.3d at 786.  Dr. Dunham even testified to the necessity of teeth for health reasons in certain inmate situations.  Thus, Dr. Dunham had the requisite knowledge of the substantial risk of future harm the lack of dentures placed on Campbell.

While Dr. Dunham knew of the substantial risk of harm a lack of dentures created, he acted reasonably to prevent future harm to Campbell.  A prison official need not take every measure to eliminate the risk of future harm from all inmates, rather must only take reasonable measures to abate it. *Farmer*, 511 U.S. at 847; *Coleman*, 114 F.3d at 785.  Society does not expect inmates to have unqualified access to health care, but prison officials must do their best to supply inmates with necessary medical care. *Hudson*, 503 U.S. at 8; 112 S.Ct. at 1000.  Dr. Dunham took reasonable measures to prevent any future harm occurring to Campbell by placing him on the denture list as soon as possible and supplying him with the proper medication to alleviate the pain from having his teeth removed.  Had Dr. Dunham placed Campbell higher on the list, other inmates would have had reason to bring a section 1983 claim against Dr. Dunham for deliberate indifference.  The reasonable measures Dr. Dunham employed to protect Campbell prevent this court from finding that Dr. Dunham deliberately disregarded Campbell's medical need for dentures.

Divergently, the court finds several inconsistencies between the actions taken at the Clarinda facility and procedures offered in the State of Iowa Department of Corrections Policy and Procedures.   First, it is not immediately apparent why Kenneth Kirkpatrick was able to receive his dentures prior to Campbell, when Campbell's teeth were removed three weeks before Kirkpatrick's teeth.  This suggests that Dr. Dunham did not follow typical Clarinda dental

procedures.  Dr. Dunham's testimony, a "Grievance Response" (Ex. C at 10), and multiple "Dental Encounter Forms" all show that the denture list sorts by the date the dentist extracted the inmate's last tooth.  This could indicate that Dr. Dunham deliberately disregarded Campbell's medical need favor of another inmate's similar medical need; however, this court has found insufficient evidence in the record to support such a finding.

Dr. Dunham attempts to explain, along with several prison officials, that the list fluctuates with the "admission and release" of inmates.  While this does not explain why Kirkpatrick appeared on the list and received his dentures before Campbell, it also contradicts Iowa Department of Corrections' procedures that "[o]nce dental prosthetic treatment has been undertaken the offender must be placed on dental hold so no transfer can take place until prosthesis is completed." (Ex. E at 3).  If this procedure were followed, "admission" of inmates would not cause the list to fluctuate, as new inmates who came without teeth would be added to the bottom of the list and transfers would not be transferred until their prosthesis were completed.  Thus, the only fluctuation that could occur would be for prisoners to move up the denture list.

At most, this magistrate judge finds the failure to provide Campbell with dentures was due to the apparent high demands for dental care in the prison system, the minimal resources in providing those dental services, and perhaps the mistaken negligence of the denture priority list. The Eighth Circuit has held that a plaintiff "must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Alber*, 458 F.3d at 765.

## V.  CONCLUSION

For the foregoing reasons, the undersigned Magistrate Judge recommends that the court find in favor of the defendant, Dr. Alfred Dunham.

**IT IS ORDERED** that, pursuant to 28 U.S.C. § 636(b)(1), the parties have until October 7, 2010, in which to file written objections, unless an extension of time for good cause is obtained.  *See Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990).  Such extensions will be freely granted.  Any objections must specify the specific portions of this Report and Recommendation to which objections are made, and set forth the basis for such objections. *See* Fed. R. Civ. P. 72.  Failure to timely file objections may constitute a waiver of a party's right to appeal questions of fact.  *Thompson*, 897 F.2d at 357.

Respectfully submitted,

Dated:     September 16, 2010

THOMAS J. SHIELDS
CHIEF U.S. MAGISTRATE JUDGE

I